**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*8:50 am, Mar 26, 2026*
**JEFFREY P. COLWELL, CLERK**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Alfred A. Arraj United States Courthouse

901 19th Street, Denver, Colorado 80294

| | |
|---|---|
| **RONALD WHITE**, an Individual, | ▲ COURT USE ONLY ▲ |
| *Plaintiff,* | Civil Action No.: |
| | _____ |
| v. | _ |
| **WINNER'S CIRCLE, INC.**, a Colorado Corporation, | Judge: |
| | _____ |
| *Defendant.* | _ |

EEOC Charge No.: 541-2025-01008

Ronald White, Pro Se

Phone: 215-416-2356

Email: Ronald.Andre.White@gmail.com

Boulder, Colorado 80302

**COMPLAINT AND JURY DEMAND**

Plaintiff Ronald White brings this action against Defendant Winner's Circle, Inc. for retaliation in violation of federal and Colorado law. Plaintiff reported the sexual harassment of minor employees and raised repeated good-faith safety concerns regarding active construction conditions. Four days after those reports, Defendant terminated his employment without warning, without documentation, and without prior discipline of any kind. Defendant's stated reasons for termination were not communicated at the time of discharge and are contradicted by its own contemporaneous records.

1

# I. PARTIES

1. Plaintiff Ronald White is an individual residing in Boulder County, Colorado. He brings this action pro se.

2. Defendant Winner's Circle, Inc. is a Colorado corporation operating a family entertainment facility at 2251 Ken Pratt Blvd, Suite A, Longmont, Colorado 80501. At all relevant times, Defendant employed Plaintiff and was large enough to qualify as an employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 et seq.

# II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Venue lies in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). Defendant's facility is in Longmont, Colorado, and every event described in this Complaint occurred within this District.

5. Plaintiff has satisfied all administrative prerequisites. He timely filed EEOC Charge No. 541-2025-01008, participated in the Commission's mediation process, and received a Notice of Right to Sue. This Complaint is filed within ninety days of that Notice.

# III. FACTUAL ALLEGATIONS

## A. Employment and Responsibilities

6. On September 17, 2024, Winner's Circle hired Plaintiff as Assistant General Manager to lead pre-opening operations at its Longmont facility. He reported directly to General Manager Michael Ebbs and was paid $70,000 per year.

7. The posted job description assigned Plaintiff responsibility for day-to-day operations, staff oversight, inventory, health and safety compliance, food and beverage standards, POS system use, and close coordination with the General Manager. He was the second-ranking manager in the building.

8. Defendant provided computers and email access for certain administrative work but did not provide a work phone. Given the demands of the role, which required coordinating vendors, distributors, contractors, interview candidates, and ownership simultaneously during an active pre-opening period, Plaintiff's personal phone was his primary operational tool, used at Defendant's direction. The facility's internet and power were also regularly disrupted by ongoing construction, which pushed additional work off-site.

**B. Performance Record**

9. Plaintiff's performance during his employment is documented in contemporaneous written communications from Defendant's own personnel and its outside management consulting firm.

10. Owner Adam Schubert approved and personally directed every task he later attempted to characterize as a failure. He approved the staff hat design in writing, specified forty units for kitchen staff, confirmed the style and fit, and told Plaintiff to rush the order. Plaintiff executed those instructions and retrieved the finished products himself.

11. Regarding the menus, GM Ebbs, who held the title of Executive Chef in addition to General Manager and had direct authority over kitchen content, reviewed the menus before Plaintiff was involved. Plaintiff then submitted a proof to Owner Schubert, who approved it for print. Two levels of management signed off before a single page was ordered.

12. Beyond those specific tasks, Plaintiff established distribution relationships with Southern Glazers, RNDC, Eagle Rock, High Country, and additional vendors, and personally conducted bookkeeper and office manager candidate interviews at Schubert's direct request.

13. Turfway, Defendant's own management consulting firm, confirmed Plaintiff's performance in writing: "You're doing great picking up the pieces. Thank you."

14. On October 11, 2024, twenty-four days before his termination, Owner Schubert texted Plaintiff directly: "Hey Ronnie, I heard you crushed it today. Really appreciate the excellent work. Please push hard this weekend as well. Glad to have you on the Winning Team!" He followed with: "I call it like I see it."

15. When Plaintiff later asked GM Ebbs directly whether his position was at risk, Ebbs replied: "I can tell you I do not know what's happening right now and what plans are."

The termination decision was made at the ownership level without Plaintiff's direct supervisor having advance knowledge of it.

16. On the POS system specifically, Ebbs wrote to Plaintiff: "I am trying to finish up on the POS stuff that I have." Responsibility for that project belonged to Ebbs, a fact he confirmed in his own words.

17. Plaintiff had no disciplinary history at any point during his employment.

## C. Absences

18. On September 29, 2024, Plaintiff was arrested in connection with a personal matter unrelated to his employment. He missed one day of work on September 30 and disclosed the circumstances to GM Ebbs upon returning. Ebbs expressed no concern and no discipline was issued. The owners were also made aware of this absence and likewise raised no objection and issued no discipline. Plaintiff also missed time due to COVID-19, during which management directed him not to report to the facility. He worked remotely throughout that period, maintaining vendor communications and conducting candidate interviews. No discipline followed. Both absences occurred thirty-five days before his termination and were not raised as concerns at the time of occurrence or at any point prior to Plaintiff's termination.

## D. Workplace Safety Conditions and Plaintiff's Reports

19. Winner's Circle was not ready to have employees in the building when Defendant put them there. The main bar was under active epoxy application and curing. The arcade was unfinished. The miniature golf installation was incomplete. The sound system had not been installed. Mezzanine railings were structurally non-compliant, with protruding screws and gaps beneath the panels wide enough to pose fall risks. Plaintiff has time-stamped video documenting these conditions.

20. Kitchen employees, who had been hired for food service, were directed to perform construction labor alongside the general contractor. Servers, bartenders, and hosts moved through areas of active construction as part of their normal workday. Multiple staff members resigned during pre-opening events specifically because they were being asked to perform construction work outside the scope of their agreed duties.

21. Contractors working on-site expressed safety concerns directly to Plaintiff. The project electrician stated: "No one should be in this building while I'm working." Carpenter

Josh stated: "It's dangerous to have people here, but I'm just doing what I'm told." Dan Blyth told Plaintiff he should not be in the building at all. General Contractor Kirk threatened to chain the doors shut if Defendant continued admitting non-construction personnel.

22. On or about October 10, 2024, Plaintiff raised these concerns in a meeting with GM Ebbs, Owner Schubert, and Turfway representatives. Schubert's response was unambiguous: "I don't give a shit what people are complaining about. I just want the job done." Any employee who disagreed was welcome to leave.

23. That same afternoon, GM Ebbs texted Plaintiff: "Just do me a favor. Take the criticism with a grain of salt. Keep your heads down and do what you do." The next morning, he sent an all-managers message: "Please continue to move forward and keep your heads down. We need to do whatever is necessary to get open."

24. By the week of October 17, Defendant was running orientations inside the building with fifty to one hundred people present while construction remained active. Kirk threatened again to chain the doors. Attendees were confined to one section of the building, but reaching restrooms required passing through active construction zones.

25. Plaintiff was not alone in raising these concerns. A current Winner's Circle manager told him after his termination: "Adam hates when I tell him about his violations and what's going to create liability. Acts like I'm out to get him when I'm just tryna help him stay open." Multiple employees raised safety concerns with ownership. All were met with the same response.

### E. What Plaintiff Reported on October 31, 2024

26. During pre-opening beta testing events between approximately October 30 and November 2, 2024, Plaintiff personally witnessed two managers employed by Defendant make sexual advances toward minor female employees who were enrolled in high school and working their first hospitality jobs.

27. In the first incident, Manager B.M. approached a group of these minors and suggested they come drink and party with him. When they told him they were underage, he offered to provide drugs, suggested they lie about their age, and invited them to his home. Plaintiff intervened directly and told him to stop. Manager B.M. dismissed the intervention and continued.

28. In the second incident, Manager M. approached a separate group of minor employees and suggested they come to a bar or his home for drinks. When they said they were in high school, he suggested they obtain fake identification or attend as his guest. He told them they were attractive, said they could all "have some fun together," and offered that if anyone drank too much they were welcome to spend the night at his residence.

29. That same evening, October 31, Plaintiff reported both incidents verbally to GM Ebbs. Defendant's own employee handbook expressly authorized verbal reports to a direct supervisor. Ebbs dismissed the report, stating that unless the minor employees came forward themselves, the matter was not a practical avenue for further action. Defendant took no immediate corrective or protective action following Plaintiff's report.

30. Defendant's own EEOC position statement later acknowledged that both managers were terminated for sexual harassment and inappropriate conduct directed at underage employees. Bar Manager John James confirmed this independently in a November 13, 2024 text message to Plaintiff, stating that Manager Michael D. had been fired for making inappropriate comments to the underage employees at the facility.

## F. The Threat of Violence

31. Also on October 31, 2024, GM Ebbs directed a violent threat at a group of female staff members, stating in substance: "I'll break your fucking arms." Multiple employees witnessed the threat. Several became visibly distressed and at least one left on leave as a direct result. Other members of management intervened. This conduct contributed to a work environment in which employees feared reporting concerns to management. Plaintiff reported the incident to management as a workplace safety concern the same day.

32. Defendant's EEOC position statement acknowledges this occurred. The company admits it was made aware of the threat, counseled Ebbs, and characterized his conduct as unprofessional.

## G. Termination and Post-Hoc Justifications

33. On November 4, 2024, Defendant terminated Plaintiff's employment. No reason was given. No documentation was provided. Plaintiff had no disciplinary history at any point during his employment. The gap between his protected reports and his termination is four days.

34. In the days that followed, a current Winner's Circle manager told Plaintiff that Owner Schubert had informed the management team he had received complaints from other managers about Plaintiff's performance. This explanation was never communicated to Plaintiff before or at the time of his discharge, through any process, formal or informal. Defendant's termination decision was made without providing Plaintiff an opportunity to respond to any alleged performance concerns.

35. Defendant eventually raised a series of performance justifications in the administrative proceedings that followed. Each one is contradicted by Defendant's own contemporaneous records:

    a. The menu errors Defendant cited were in content reviewed and approved for print by GM Ebbs and Owner Schubert. Plaintiff was the messenger, not the author.

    b. The apparel order was executed step by step on Schubert's own written instructions. He approved the design, specified the quantity, and told Plaintiff to rush it.

    c. The POS system was Ebbs's project. He said so himself in writing.

    d. The September 30 absence, the only missed day in Plaintiff's entire tenure, occurred thirty-five days before his termination. Ebbs expressed no concern when Plaintiff returned. No discipline was ever issued.

    e. The phone use allegation is difficult to reconcile with the fact that Defendant provided no work phone and Plaintiff's daily coordination of vendors, contractors, candidates, and management was conducted by phone at Defendant's explicit direction.

    f. Three independent sources, the owner, the general manager, and the company's own consulting firm, praised Plaintiff's performance in writing in the weeks immediately before his termination.

36. Defendant subsequently promoted Manager B.M., one of the two managers Plaintiff had reported for harassing minors, directly into Plaintiff's vacated position. Approximately two weeks later, Defendant terminated Manager B.M. for sexual

harassment of a minor, the same conduct Plaintiff had reported on October 31, 2024, four days before his own discharge. The second manager whose conduct Plaintiff reported was also subsequently terminated for sending inappropriate texts to a minor employee, who resigned as a result.

37. The following facts are supported by Defendant's own records and communications: Plaintiff received written praise from ownership twenty-four days before termination. He had no disciplinary history of any kind. He was terminated four days after his protected reports. The justifications offered afterward were not documented before termination and are contradicted by Defendant's own contemporaneous communications. The manager he reported was promoted into his position, then fired two weeks later for the conduct Plaintiff reported.

## H. Post-Termination Conduct

38. On November 13, 2024, Bar Manager John James contacted Plaintiff to obtain the contact information for the security company Plaintiff had sourced during his employment. On November 19, GM Ebbs separately contacted Plaintiff to obtain the name of the cleaning vendor Plaintiff had arranged, because the company wished to retain that relationship. Defendant's post-termination reliance on Plaintiff's vendor relationships is inconsistent with any characterization of his performance as inadequate.

39. Plaintiff engaged in protected activity under federal and Colorado law by reporting the sexual harassment of minor employees to management on October 31, 2024, and by making repeated good-faith reports of unsafe and unlawful working conditions beginning on October 10, 2024. Defendant was aware of both sets of reports. Plaintiff was terminated four days after the October 31 report.

## IV. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*Retaliation Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)*

40. Plaintiff incorporates the preceding allegations as though fully set forth here.

41. Title VII makes it unlawful for an employer to retaliate against an employee who has opposed conduct made unlawful by the statute. In Crawford v. Metropolitan

Government of Nashville, 555 U.S. 271 (2009), the Supreme Court held that an employee engages in protected opposition activity by reporting harassment observed in the workplace, regardless of whether that employee was personally subjected to the harassment. Plaintiff reported the sexual harassment of minor employees on October 31, 2024. That report constitutes protected activity under Crawford and 42 U.S.C. § 2000e-3(a).

42. Defendant had direct knowledge of Plaintiff's protected activity. GM Ebbs received the report personally on October 31, 2024. Four days later, Defendant terminated Plaintiff's employment.

43. The temporal proximity of four days between Plaintiff's protected activity and his termination is sufficient to support an inference of causation. That inference is further strengthened by the absence of any prior discipline, Defendant's contemporaneous written praise of Plaintiff's performance, and the shifting and post-hoc nature of Defendant's asserted justifications. Plaintiff's termination constitutes a materially adverse employment action.

44. As a result of Defendant's actions, Plaintiff has lost wages, benefits, and future earning capacity, and has suffered emotional distress and damage to his professional reputation. Because Defendant's retaliation was willful and undertaken with reckless disregard for Plaintiff's federally protected rights, Plaintiff seeks punitive damages under 42 U.S.C. § 1981a.

Plaintiff seeks relief as set forth in the Prayer for Relief.

**SECOND CLAIM FOR RELIEF**

*Retaliation Under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402*

45. Plaintiff incorporates the preceding allegations as though fully set forth here.

46. The Colorado Anti-Discrimination Act prohibits retaliation against an employee who opposes discriminatory or harassing conduct in the workplace. C.R.S. § 24-34-402(1)(e)(I). Unlike Title VII, CADA imposes no damages cap tied to employer size. Plaintiff's reports on October 31, 2024, covering both the sexual harassment of minor employees and GM Ebbs's violent threat toward female staff, constitute protected activity under CADA.

47. Defendant terminated Plaintiff four days after those reports. The absence of prior discipline, the written commendations that immediately preceded termination, and the post-hoc justifications that are contradicted by Defendant's own records each support the conclusion that the discharge was retaliatory.

48. Plaintiff seeks compensatory damages for lost wages and benefits, impaired earning capacity, and emotional distress, together with attorneys' fees and costs under C.R.S. § 24-34-405.

Plaintiff seeks relief as set forth in the Prayer for Relief.

**THIRD CLAIM FOR RELIEF**

*Wrongful Termination in Violation of Colorado Public Policy*

49. Plaintiff incorporates the preceding allegations as though fully set forth here.

50. Colorado recognizes a tort claim for wrongful discharge when an employee is terminated for engaging in conduct that public policy affirmatively protects or requires. The conduct Plaintiff reported, specifically adult employees soliciting alcohol, drugs, and sexual contact from high school students, constitutes conduct that violates Colorado law and public policy. Reporting such conduct to a supervisor is precisely the kind of action Colorado public policy encourages. The same is true of reporting a supervisor's violent threat directed at female employees.

51. Plaintiff was fired four days after making both reports. No legitimate documented justification supported that decision at the time it was made. The explanations that emerged afterward, offered only after administrative proceedings began, are refuted by Defendant's own communications.

52. Plaintiff seeks all compensatory and consequential damages available under Colorado law, including lost wages, impaired earning capacity, and emotional distress.

Plaintiff seeks relief as set forth in the Prayer for Relief.

**FOURTH CLAIM FOR RELIEF**

*Retaliation for Reporting Workplace Safety Violations, C.R.S. § 8-2-116*

53. Plaintiff incorporates the preceding allegations as though fully set forth here.

54. C.R.S. § 8-2-116 prohibits an employer from retaliating against an employee who reports, in good faith, conduct the employee reasonably believes violates applicable workplace safety laws and regulations, including those governing safe construction conditions and employee protection. Beginning on October 10, 2024, Plaintiff raised specific safety concerns with ownership and management: employees without training performing electrical-adjacent work, active chemical curing in occupied spaces, structurally non-compliant mezzanine railings, and fifty to one hundred untrained personnel walking through an active construction zone.

55. Owner Schubert responded that he did not care. GM Ebbs directed the management team to keep their heads down. A current employee later confirmed to Plaintiff that raising safety concerns with Adam Schubert routinely produced this same response. Plaintiff's concerns were reasonable, his reports were made in good faith, and the statute protects them.

56. Plaintiff was terminated on November 4, 2024, following a pattern of safety reports that ownership had made clear were unwelcome. He seeks all compensatory damages available under C.R.S. § 8-2-116, including lost wages, impaired earning capacity, and emotional distress.

Plaintiff seeks relief as set forth in the Prayer for Relief.


## V. DAMAGES

57. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer the following:

  a. Lost wages and employment benefits from the date of termination through judgment;

  b. Lost future earning capacity;

  c. Emotional distress, mental anguish, and damage to professional reputation;

  d. Punitive damages for Defendant's willful and reckless disregard of Plaintiff's protected rights under federal law; and

  e. Pre-judgment and post-judgment interest to the fullest extent permitted.


## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ronald White respectfully requests that this Court enter judgment in his favor and against Defendant Winner's Circle, Inc., and award:

A. Compensatory damages for lost wages, lost benefits, and impaired earning capacity;

B. Compensatory damages for emotional distress, mental anguish, and reputational harm;

C. Punitive damages under 42 U.S.C. § 1981a and applicable Colorado law;

D. Attorneys' fees and costs under 42 U.S.C. § 2000e-5(k) and C.R.S. § 24-34-405;

E. Pre-judgment and post-judgment interest; and

F. Any further relief this Court finds just and proper.

## VII. JURY DEMAND

Plaintiff Ronald White demands a trial by jury on all triable issues pursuant to Fed. R. Civ. P. 38 and the Seventh Amendment to the United States Constitution.

Respectfully submitted this  25th  day of _____March_____, 2026.

**Ronald White**

Pro Se Plaintiff

215-416-2356

Ronald.Andre.White@gmail.com

Boulder, Colorado 80302

---

**VERIFICATION**

I, Ronald White, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: _____3/25/2026_____

Signed by:

Ronald White

7131C090AD61431...

Ronald White